Good morning, Your Honors. William L. Williams, Jr., Deputy Attorney General, representing the California Department of Justice, Bureau of Gambling Control, and Matthew Campoy. I'd like to reserve two minutes for rebuttal. May it please the Court. I'm not sure if the Court is fully aware of all of the developments that have been transpiring during the pendency of the appeal. Are you talking about the new legislation? Yes. Other than the legislation, there's been some responses to the legislation in the district court. So I'm going to go through those, unless the Court feels that they're fully apprised of them at this point. Well, I don't mind you doing that. I guess one question I had when I read at least of what I think are the new developments is that why don't we send this back to the district court to see how that plays out, this plenary injunction? I'm sorry, why? Why wouldn't we want to send this back to the district court to see how it plays out in terms of the court was the district court was dealing with one set of assumptions that have now changed? Okay. Well, we had actually made a motion for remand based upon the passage of SB 1369, which was opposed by the appellants to give the district court that opportunity. And when it was denied by this Court, we are fine with this Court continuing with the case. And I think the main reason ---- I'm offering you the opportunity to argue that we should change our mind if you want to do that. I don't necessarily feel that the Court needs to remand this case at this point, because basically the fundamental issue that is before this Court is now simply the ADA claim as it arises in the context of SB 1369, Senate Bill 1369, excuse me, as passed by the California legislature and signed by the governor. And all that SB 1369 did was confirm the Bureau of Gambling Control's enforcement posture in this case relative to the electric gambling devices that the appellees used for charitable bingo, which the Bureau has said were illegal. So it's our position that really, even though remand could be appropriate because it is a new law and it does inject some issues relative to the reasonable accommodation into the case, it still puts before this Court whether the Bureau interpretation of that that the Court found to be a violation of the ADA is right or wrong under the ADA. Why do we even have to get to that anymore? I mean, the legislation is so clear that you have to have a live caller that the question now to me seems to be can you have an accommodation to a bingo game that involves something that doesn't require a live caller? And I'm not disagreeing with you. I'm just saying that the issue that the district court decided on would not be that much different than what this Court would decide upon with SB 1369. I'm not disagreeing with you that SB 1369 has changed the equation by clearly out by making it clear that these types of devices are illegal. But I'm going to go ahead and address the ADA issues in light of SB 1369, and then if it's the Court's choice to rule on the merits versus remanding, then the Court can make that choice. Appellant's alleged ADA claim arises under 42 U.S.C. May I ask you a question before you dive in? Sure. I don't want to go too far afield, but it was one that struck me when I read the briefs and I wanted to ask at some point, and maybe this is the best. If you assume, for the sake of argument, that you have an electronic bingo machine that absolutely mimics what goes on in traditional bingo. We know these machines don't. But if it absolutely mimics it, do you have any problem with the electronic format? Do you still? Well, gambling in the state of California, and the technology of gambling is something that has to be regulated, because in a lot of ways it's the technology that determines what kind of gambling you have. I mean, if you have an electric machine, I'm not saying that there might not be one that would be satisfactory that perfectly mimicked it, but that's not what the statute allows. The statute allows more of the traditional card-based game. And we believe that those types of distinctions are appropriate because gambling is now driven so much by technological advancements, as this case is a perfect example with these electronic that don't mimic bingo, they mimic slot machines. But I gather your answer is, I'm leaving aside the new statute for the moment, but even if the electronic form exactly mimicked what was going on in live bingo, it would be the department's position that that's illegal. Illegal. Yes. Yes, it would be the position because the statute is, the department is not the legislature. The legislature in SB 1369 is affirming the hard card form of bingo. In other words, it's not an electrical game. But they are also affirming card mining devices, which allow people to follow several games and are more similar to what you're describing. But nonetheless, just a pure game without the hard card that's electronic has not been affirmed by the legislature, and the Bureau of Gambling Enforcement would not usurp the legislature's decision in that regard. Getting back to Section 12132, it provides that no qualified individual with a disability shall by reason of such disability be excluded from participation or deny the benefits of the services, programs, or activities of a public entity or subjected to discrimination by any such entity. The district court in its decision relied upon disparate treatment of disabled persons by virtue of the enforcement action of the Bureau of Gambling Control, the gravamen of that decision being that the State was denying a reasonable accommodation in the form of a Pelley's electronic gambling devices that the disabled could use to play bingo. The starting point, in our opinion, for analysis of this ADA claim is Crowder v. Kitagawa, in which the Ninth Circuit overturned strict quarantine rules for animals entering the State of Hawaii because those requirements had a disparate impact on the visually impaired, who were dependent upon guide dogs basically to access not only public services, but probably to live their normal lives. Our position is that charitable bingo, however, is not a service, program, or activity under the ADA. Bingo is simply not provided by the government. Here, the only thing that the Bureau is doing is that it is regulating and enforcing the gambling laws. The State, in this regard, regulates and enforces a number of prohibitions and restrictions on gambling in a number of contexts. There's controlled gambling throughout the State, card rooms, and various other types of gambling. If the fact that the State regulates that type of gambling should not be used to turn that into a public service, program, or activity. In other words, it's still a private enterprise. The card room is still a private enterprise. It's not once they – the fact that the State regulates it doesn't turn it into something other than what it already is. And it's not something that can be actionable under the ADA because the State regulates the private entity. Do I understand correctly that there have been statutes or cases that have pronounced this activity as illegal in the State of California? The – well, there was one case, there was a case in State court that was in the Superior – at the Superior Court level that I believe is still currently on appeal that is in the record, where it was found that a hard card was a requirement for the play of charitable bingo in the County of Sacramento when the County of Sacramento changed its – its bingo ordinance to allow for electronic devices. A court held that a hard card was still necessary. However, I do not believe that this specific issue in terms of the illegality of these types of devices has been specifically addressed. The Attorney General has – the Attorney General's office has opined that a hard card is required for the play of charitable bingo. And it has also opined, however, that card mining devices tells somebody when they've won that those could be used in conjunction with hard card bingo. Has that been called to the attention of the district court in this case? Yes. And tell me what has transpired in the district court since this appeal of the preliminary injunction in reference to those activities. Well, those – those activities were called to the district court's attention because they predated the case. They were called to the district court's attention during the preliminary injunction phase. What has transpired since the – since the issuance of the preliminary injunction is that the appellees have dismissed their 1983 claims, and the only claim that remains now is an ADA claim. And several of the plaintiffs – actually, only two of the plaintiffs have actually voluntarily dismissed their claims. Well, I don't understand. Why hasn't the district court gone ahead towards the permanent injunction? The case is still progressing. Is it? Yes. The case is progressing in the sense. But to some extent, there is an anticipation of what was going to be happening with this appeal because it is purely a legal issue that we believe is before the court. We have made it quite clear in sports forum that we expect the district court and appeals of temporary injunctions. It would appear that the district court is not doing that or that the word has not spread to the bar. No. We are moving ahead. They amended their complaints. We have a motion to dismiss relative to their new complaints on file relative to the amended complaints. And so we are – and I will say that the one thing that we did do that would be in had the hearing on the motions to dismiss trail the oral argument in this case on the chance that this court might give some direction relative to the ADA issue that would be helpful on the motions to dismiss. Do you have a trial date? Yes, we do have a trial date. And I believe it's – I don't have it right in my head. I believe it's about a year from now. Before you agree to trail cases waiting for us on a temporary injunction, you may want to read sports forum to see if that's appropriate. Okay. Go ahead. You have about two minutes left. Do you want to save that for rebuttal or? Well, I'd just like to point out that the main case that the district court relied on was McGarry. And we believe that McGarry is distinguishable from this case because McGarry involved a direct enforcement action against a disabled person, which is not present here. This is a – this enforcement had to do with a third party in this case, and we believe it is much more like the safe air for everyone case. Additionally, in McGarry there was no other reasonable accommodation available. They made no effort at a reasonable accommodation in terms of time for the individual to clean up the nuisance. In this case, with SB 1369 now, there are specific provisions allowing for regulation of reasonable accommodation so that the individuals with a disability will be able to participate. We still aren't conceding that this is an ADA issue, but the state statute itself has undertaken to regulate the issue of allowing reasonable accommodations by the operators of bingo. Thank you all. I'll reserve the rest of my time for rebuttal. Thank you, counsel. Good morning, Your Honors. My name is Jeff Goodman, and I represent the plaintiffs and intervenors, with the exception of intervenor El Camino Boosters, who is represented by Greg Peterson, who is sitting with me at counsel's table. Before you get started, can I ask you what's bothering me so you can pick it up during your argument? Absolutely. I think I could be persuaded otherwise, but I think this has to be reversed, and I'll tell you why. If the district court committed an error of law, then it has to go back for the court to reexamine the preliminary injunction under the correct rule of law. Now, this case was briefed under our old law, and our old law was an amalgam of several cases in which we should have gone in bank but didn't and put together, carved together, a process. Now, the Supreme Court has taken a look at that in winter and reversed this, in an opinion by Chief Justice Roberts, pointing out specifically that the possibility of irreparable harm is an improper standard, and I think the likelihood test also has been jettisoned. It's a much stronger standard now to get a preliminary injunction. Now, I haven't read anything in the briefs that cover Miller. I haven't seen any indication from counsel to us that winter should be considered, which you're allowed to do under our rules, so I take it that counsel are unaware of winter because I don't think it can be distinguished. It specifically reversed the Ninth Circuit on this issue. So what I would like to find out from you is why don't we have to vacate and remand for reconsideration under the Supreme Court case of winter? You're absolutely right, Your Honor. I'm not familiar with winter. But anticipating what you suggest the holding of winter is, I believe Judge Mendez was strong enough in his statement about irreparable harm. He didn't say there was a likelihood of irreparable harm. He made a very specific factual finding that the plaintiffs would indeed suffer irreparable harm, and that was based on the record of declarations and the like. And I can go through a number of the specifics. The individual plaintiffs in their declarations specifically stated that they could not use paper cards, which now this SB 1369 requires, and they therefore could not enjoy the activities of bingo and the social activities and compete against able-bodied people. The charity plaintiffs also submitted declarations, which were not responded to in any fashion, saying that at this point in the last couple of years, their revenues are almost exclusively now based on these electronic machines. And if you take them out. But I didn't see any evidence in those declarations, Counsel, that their revenues were coming exclusively from people who were disabled. It was pretty clear to me by reading those declarations that what they were saying was the bingo machines produced by companies like BGT are a lot more profitable for us than the old caller-style bingo, and so this is what we want to do because this is the only way we're going to make any money. And it didn't have anything to do with the disabled. Well, that's a separate issue. I grant you you're right. But as you know, bingo is not played against the house. It's played against everybody else in the hall. So you can't really have certain machines for disabled people. Then you would be basically making disabled people play against disabled people. So when you're talking about how bingo operates in the real world, Judge Mendez was very specific that these charities would suffer irreparable injury. The declarations also said that if we lose these machines, our clients will go to other places and we will lose that stream of revenue. So I must confess, I'm not — I don't know what the holding of winner was, but I think if you look back to Judge Mendez's — excuse me, his order, I think he's very emphatic about his factual findings and just equally emphatic that the State showed absolutely no injury. So let's assume for the sake of argument that you believe that the record will show that it meets the different standard. We have a new law. We have — the game has changed a bit since we started. Why wouldn't it be prudent for us to keep, for example, a preliminary injunction in effect, but for a limited time vacate it as of a date certain, send it back to the district court. The district court has a certain amount of time to reconsider in light of winner and the new statute. The district court wants to reimpose the preliminary injunction by the deadline, fine. They can — California can take it up again, but we'd have a more complete record. Anything wrong with that? You know, as long as you give the district court the opportunity to revisit and reissue the injunction if the district court feels it's all right, that's fine. I don't really have a problem with that. You don't want to get your clients picked up and hauled off to jail during the pendency of this case. That's the real issue. That's the real issue. And, you know, obviously I see where the court is going. I'm not going to — We're not going. We're just exploring ideas. I just did really want to pick up on a few things. Counsel, let me tell you what's bothering me. Maybe that will help you direct your comments to us. Sure. In light of 1369, you have to have a paper card. You have to have a live caller. How can a machine that is very, very different from the traditional bingo game that we grew up playing or watching the nuns conduct or whatever, how can that, the judge's decision, now be reconciled in light of the legislature's change of the law? We believe the law violates the ADA. And Judge Mendez anticipated that that may be the case. California says bingo means a live caller with a paper ballot, and the California Constitution says bingo is authorized as long as it's conducted for charitable purposes. California cannot have that system because a federal law, the ADA, now tells it that it must authorize a game that looks like a slot machine. Well, I just want to revisit. Pretty extreme position. You know, when you first consider it, maybe I acknowledge that. But when you get into it, I don't think it is. One thing that I do want to point out is I think it was you, Judge Thomas, that said what if these were exact replicas of bingo, and, of course, we know they're not. Well, yeah, really they are. And we have expert testimony to that effect. I was asking a theoretical question because I wanted to get to the answer, which I think this day was forthcoming, is that if it's electronic, it's out. I mean, that's their view. It's electronic. And when there was reference to the State superior court that claimed that you had to use paper, these machines actually generate paper. So Judge Mendez was aware of that State court action and says it really wasn't relevant because he was evaluating these machines. And remember, the district court does have more information and evidence because Judge Mendez actually had a demonstration of these machines. But my point about the legislation, now, you understand that this legislation was largely geared to cut off the legs of this lawsuit. It was done with a gut and amend bill in the middle of the night by special interest. And it's really very cynical because if you look at this legislation, it, number one, seems to acknowledge that the ADA applies here, notwithstanding the position of the Department of Justice, because it has a provision saying we should have emergency regulations by May 1st, and those may include accommodations to disabled people. On the other hand, it gives with one hand, but then it takes away the very accommodation that these plaintiffs have said are necessary. By adding to the generic definition of bingo, that you must have a live caller and you must have paper and you can't use electronic aids, they basically take away the very accommodation that worked. If you look at it, the PGA v. Martin. They allow you to have the handheld devices that will allow you to figure out, you know, what numbers have been daubed and so that you can call. If you can't daub the paper ballot, like Mr. Foss can't, like Mr. Bastiani couldn't, you can't even bring somebody with you to help you daub. It says you individually have to do it. It's kind of like the PGA v. Martin case. If that's exactly, I mean, that's comparable here. The PGA said that Mr. Martin couldn't use this accommodation. And that very prohibition was found to be a violation of the ADA. Now, I know it's not a State action case, but what if the State had directed the PGA to do that? That leads me into kind of my second argument, because the DOJ is trying to suggest that charitable bingo isn't done by the State. Well, I believe it is. Charitable bingo is one of the two monopolies of illegal gambling that has essentially been given special status. California lottery is one. Charitable bingo is another. And it's clear that the ADA not only applies to State action, but according to the regulations, CFR 28 part 3035, it is clear that a public entity not only is prevented from discriminating, acting on their own, but also through contractual licensing or other arrangements. And it's clear that charities are not in the business of running bingo halls. They're acting ministerially according to a vast regulatory bureaucracy. They suggest that, well, cardrooms, they're private entities. Well, cardrooms do not provide illegal gambling. They're not games of chance. But assume for a minute that the government said, well, cardrooms, you can't have ramps anymore. I can't really believe that we would not consider that directive of the government not to bring about Title II of the ADA. I think the Court's recommendation to put this back to Judge Vendez in light of the change in case law and injunctive standards and also the 1369 is not a bad one. And if you do, however, get to the merits of whether the judge abused his discretion in granting the injunction, I think you'll have to, in the very narrow role you have, affirm Judge Mendez's ruling, because there clearly are serious questions. There's clearly threatened and actual irreparable harm that would occur. And I don't want to take up the Court's time. If you have any other questions or concerns, I'd be happy to address them. Thank you, Counsel. Thank you. You have 53 seconds left. Thank you. I'll make it brief. Just to point out that SB 1369 has a specific mitigation provision where charities can participate in a fund when they're no longer using these types of devices to make up for that. So the irreparable harm that he just described is now illusory, and so it does not exist at all. The other thing that I want to point out is that SB 1369 does say that the State may offer assistance to a player with disabilities in order to enable that player to participate in a bingo game. And then it goes on and it has certain restrictions on that, but it's definitely set that forth. It authorizes the little handheld devices. Does it also authorize or make provisions for a live person to help sit in, help somebody for example? That would be something that could be addressed in regulation. Obviously, that's not something that's prohibited. They prohibit certain things as reasonable accommodations here. And I think my last point is that the reasonable accommodation that we're looking at here is almost per se unreasonable in that we're talking about slot machine type devices has been described as the only reasonable accommodation. And not only are they the only reasonable accommodation, they have to be allowed to be played by the disabled and non-disabled alike. It's almost patently beyond the scope of the ADA. And if the court should reach demerits, we do ask this court to reverse the district court's injunction. Thank you. Thank you all for your arguments. The case just heard will be submitted and will be in recess for the morning.
judges: Wallace, Thomas, Bybee